UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LEON J. B.,

                                    Plaintiff,

                    v.

FRANK BISIGNANO,[1] COMMISSIONER OF
 SOCIAL SECURITY,

                                    Defendant.
_____

**DECISION**
**and**
**ORDER**

**22-CV-569-LGF**

**(consent)**

APPEARANCES:              HILLER COMERFORD INJURY & DISABILITY LAW PLLC
                          Attorneys for Plaintiff
                          IDA M. COMERFORD,
                          ELIZABETH ANN HAUNGS, and
                          MARY ELLEN GILL, of Counsel
                          6000 North Bailey Avenue
                          Suite 1A
                          Amherst, New York  14226

                          MICHAEL DiGIACOMO
                          UNITED STATES ATTORNEY
                          Attorney for Defendant
                          Federal Centre
                          138 Delaware Avenue
                          Buffalo, New York  14202
                                    and
                          GEOFFREY M. PETERS, and
                          GRAHAM MORRISON,
                          Special Assistant United States Attorney, of Counsel
                          Social Security Administration
                          Office of General Counsel
                          6401 Security Boulevard
                          Baltimore, Maryland  21235

_____

[1] Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

On May 19, 2025, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order.  (Dkt. 19).  The matter is presently before the court on motions for judgment on the pleadings filed on February 16, 2023 by Plaintiff (Dkt. 14), and on April 12, 2023 by Defendant (Dkt. 16).

**BACKGROUND**

Plaintiff Leon J. B. ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications ("applications") filed with the Social Security Administration ("SSA") on March 31, 2016, for Social Security Disability Insurance Benefits ("DIB") under Title II of the Act, AR[2] at 184-92, and for Supplemental Security Income ("SSI") under Title XVI of the Act, AR at 175-83 (together, "disability benefits").  Plaintiff alleges he became disabled on June 23, 2013, based on a heart attack, pacemaker, and stents.  AR at 175, 184, 258, 262. Plaintiff's applications initially were denied on June 17, 2016.  AR at 87-96, 111-16.

On August 17, 2016, Plaintiff requested an administrative hearing before an administrative law judge with the SSA ("ALJ"), AR at 117-19, which was granted with an administrative hearing held on August 31, 2018, before ALJ Mary Mattimore ("ALJ Mattimore"), located in Buffalo, New York, with Plaintiff appearing via video teleconference from Olean, New York ("first hearing").  AR at 55-86.  Appearing and

---

[2] References to "AR" are to the Bates-numbered pages of the Administrative Record electronically filed by Defendant in four parts on October 19, 2022 (Dkts. 6 - 9).

testifying by telephone at the first hearing were Plaintiff, represented by legal counsel Jeanne Murray, Esq., along with an impartial vocational expert ("VE") Dawn Blythe.

On September 27, 2018, ALJ Mattimore issued a decision denying Plaintiff's claim, AR at 8-23 ("First ALJ Decision"), which Plaintiff timely appealed to the Appeals Council.  AR at 169-72.  On May 22, 2019, the Appeals Council denied Plaintiff's request for review, AR at 1-7, rendering the ALJ's Decision the Commissioner's final decision on Plaintiff's disability benefits applications at that time.  On July 22, 2019, Plaintiff commenced an action in this court seeking review of the First ALJ Decision denying Plaintiff disability benefits, with cross-motions for judgment on the pleadings filed on April 30, 2020 (Plaintiff) and May 21, 2020 (Defendant).  *Leon J.B. v. Commissioner of Social Security*, 19-CV-958-HKS.  By Order filed February 9, 2021, *Leon J.B. v. Commissioner of Social Security*, 2021 WL 456904 (W.D.N.Y. Feb. 9, 2021), judgment on the pleadings was granted in favor of Plaintiff and denied as to Defendant, with the matter remanded to the Commissioner for further assessment and clarification of Plaintiff's residual functional capacity ("RFC").  Accordingly, on March 17, 2021, the Appeals Council vacated the First ALJ Decision and remanded the matter to an ALJ for further proceedings.

Upon remand, another administrative hearing was scheduled for August 19, 2021, before ALJ Mattimore, but was adjourned because a medical expert who was scheduled to appear was not ready.  AR at 1007-15.  The matter was then reassigned to ALJ Bryce Baird ("ALJ Baird" or "the ALJ"), before whom a second administrative hearing was held on December 7, 2021 ("second hearing").  AR at 955-1006.  Because of the COVID 19 pandemic, the second hearing was held via teleconference before ALJ

Baird located in Buffalo.  Appearing and testifying at the second hearing were Plaintiff, represented by Mr. Valentine, Esq., an impartial medical expert Joseph R. Gaeta, M.D., a cardiologist ("Dr. Gaeta"), and impartial VE Amy Vercillo ("the VE").  On March 28, 2022, the ALJ issued a decision denying Plaintiff disability benefits ("Second Hearing Decision").  AR at 930-54.  This action challenging the Second Hearing Decision followed on July 22, 2022.

On February 16, 2023, Plaintiff moved for judgment on the pleadings (Dkt. 14) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 14-1) ("Plaintiff's Memorandum").  On April 12, 2023, Defendant moved for judgment on the pleadings (Dkt. 16) ("Defendant's Motion"), attaching the Commissioner's Memorandum of Law in Support of Her Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief, Pursuant to Local Rule 5.5 (Dkt. 16-1) ("Defendant's Memorandum").  On May 3, 2023, Plaintiff filed Plaintiff's Reply to Commissioner's Memorandum in Support (Dkt. 17) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.


## FACTS[3]

Plaintiff Leon J.B. ("Plaintiff"), born May 8, 1967, was 46 years old as of his alleged disability onset date ("DOD") of June 23, 2013, and 54 years old as of March 28, 2022, the date of the Second ALJ Decision.  AR at 175, 184, 258, 945.  Plaintiff lives in

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

a house with his wife, who helps Plaintiff care for three pet dogs, and his adult daughter. AR at 275-76, 978.  Plaintiff's impairments prevent him from doing anything too strenuous, but he does not require any assistance tending to grooming and self-care, Plaintiff's wife prepares meals, and Plaintiff can perform some household and yard chores.  *Id*. at 276-78.  Plaintiff goes outside daily, has a driver's license, and regularly drives which is his primary mode of transportation.  *Id*. at 278, 977-78.  Plaintiff shops for household items as needed, can handle money and pay bills.  *Id*. at 278-79. Plaintiff's hobbies include watching television, golfing, hunting, and fishing, although he golfs, hunts, and fishes less now than prior to his heart attack in 2013 because he tires easily.  *Id*. at 279.  Plaintiff has no trouble getting along with others, but his socialization is generally limited to visiting with others and talking on the telephone.  *Id*. at 279-80. Plaintiff maintains physical activity leaves him short of breath, and his pacemaker interferes with Plaintiff's ability to raise his left arm.  *Id*. at 280.

Although he attended school in regular classes, Plaintiff did not graduate high school, but obtained a GED in 1989, and has not completed any specialized job training, trade, or vocational school.  AR at 263, 978.  Plaintiff's past relevant work ("PRW"), includes as a construction worker, laborer, and housing inspector.  AR at 263. After his heart attack, Plaintiff continued to work as a housing inspector on a part-time basis and reported income through 2020.[4]  AR at 173-74, 1284-88, 1302-08.  Plaintiff last worked as a housing inspector for Cattaraugus Development Corporation until August 2020 when Plaintiff was laid off.  AR at 979-80.  After he was laid off, Plaintiff

---

[4] At the second hearing, the ALJ mentioned that Plaintiff's earnings for 2015 exceeded the level for substantial gainful activity which would render Plaintiff ineligible for disability benefits for that year.  AR at 981.  Plaintiff then stated he intended to amend his disability onset date to May 7, 2017, AR at 982, but Plaintiff never did amend the disability onset date.  AR at 934.

collected unemployment benefits until they were exhausted in September 2021.  AR at 979-80.

It is undisputed that Plaintiff had a myocardial infarction (heart attack) on June 23, 2013, for which Plaintiff was initially treated in the emergency room at Olean General Hospital ("OGH"), AR at 380-400, and under underwent surgical placement of stents on June 25, 2013, by Vijay S. Iyer, M.D., Ph.D. ("Dr. Iyer"), at Buffalo General Hospital.  AR at 357-66.  On June 4, 2014, Plaintiff underwent a coronary stress test that ruled out critical coronary artery disease, but showed a marked hypertensive blood pressure response to exercise.  AR at 421, 562.  On February 6, 2015, Plaintiff was noted to have poor chronotropic incompetency (inability to appropriately increase heart rate in response to physical activity or stress), and a marked hypertensive blood pressure response to exercise.  AR at 426.  To treat both conditions, referred to as "sick sinus syndrome," Plaintiff underwent surgical placement of a pacemaker on February 27, 2015, performed by Safi M. Malik, M.D. ("Dr. Malik"), at OGH.  AR at 408-11.

In connection with his disability benefits applications, Plaintiff, on June 6, 2014, underwent an internal medicine examination by consultative physician Michael Rosenberg, M.D. ("Dr. Rosenberg"), whose physical examination was essentially normal.  AR at 579-83 ("Dr. Rosenberg's opinion").  Dr. Rosenberg's diagnoses included, by history, coronary artery disease with bradycardia (slow heartbeat), asymptomatic at present, hypertension, and history of dyspnea (shortness of breath), with Plaintiff's prognosis "stable."  AR at 582.  Dr. Rosenberg's medical source statement included that Plaintiff "is restricted from activity that requires moderate or great exertion secondary to his history of shortness of breath exacerbated by exercise.")

*Id*. at 583.  Plaintiff's medical records were reviewed on February 24, 2020, by State Agency single decision maker ("SDM")[5] Tracey Passantino ("SDM Passantino"), who concluded Plaintiff has ischemic heart disease (diminished blood and oxygen supply to heart muscle due to narrowed or blocked arteries), and essential hypertension (high blood pressure with not identifiable secondary cause), but is not disabled.  AR at 91-96.

During the period relevant here, Plaintiff was followed for his heart condition at Great Lakes Cardiology ("Great Lakes Cardiology") where he regularly saw Nurse Practitioner ("NP") Cliff Pyne ("NP Pyne").  Beginning in 2017, Plaintiff commenced receiving primary care at Cuba Family Health Care ("Cuba FHC") where he was treated by Phyllis Bessey, FNP-C ("NP Bessey"), and NP Jodi Kottwitz ("NP Kottwitz").  AR at 1378-1453; 1571-84.

## DISCUSSION

### 1.    Standard and Scope of Judicial Review

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's

---

[5] Single decision-makers or "SDMs" are "non-physician disability examiners who may make the initial disability determination in most cases without requiring the signature of a medical consultant."  *Myia M. v. Kijakazi*, 2023 WL 5694937, at *4 n. 6 (W.D.N.Y. Sept. 5, 2023) (quoting *Mae B. v. Comm'r of Soc.Sec.*, 2021 WL 2643177, at *5 (W.D.N.Y. June 28, 2021) (further internal quotation omitted)).  Notably, an SDM's assessment of disability is not a medical opinion for the purposes of appeals.  *Alberalla v. Colvin*, 2014 WL 4199689, at * 10 (W.D.N.Y. Aug. 22, 2014) (citing SSA's Program Operations Manual System ("POMS") DI 24510.050(C)).  Accordingly, "it is error for an ALJ to give weight to the opinion of a[n] SDM."  *Myia M.*, 2023 WL 5694937, at *4 n. 6 (quoting *Mae B.*, 2021 WL 2643177, at *5).

determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has instructed . . . that the factual findings of the Secretary,[6] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).  "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if

---

[6] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

a reasonable factfinder would *have to conclude otherwise*.'"  *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2.    Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.[7]  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the

---

[7] Although the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title II, 42 U.S.C. § 423(d), and Title XVI, 42 U.S.C. § 1382c(a)(3), are identical, so that "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

Commissioner must then consider the applicant's residual functional capacity ("RFC") which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

**3.    Second ALJ Decision**

In the instant case, the ALJ found Plaintiff meets the Act's insured status requirement for SSDI through June 30, 2025, and has not engaged in substantial gainful activity ("SGA") since June 23, 2013, Plaintiff's asserted disability onset date ("DOD"), and that Plaintiff's income from part-time work through 2020 does not rise to the level of

substantial gainful activity ("SGA").[8]  AR at 936.  The ALJ found Plaintiff suffers from the

severe impairments of history of heart attack with stent placement and pacemaker,

coronary artery disease, and hypertension, *id*. at  936, but that Plaintiff's hyperlipidemia,

bradycardia, arrythmia, sick sinus syndrome, right shoulder impingement syndrome, left

wrist hyperextension, history of carpal tunnel, diabetes mellitus, mild obesity, hernia,

dyspnea, dermatitis, benign prostate hyperplasia, sleep disturbance, fatigue, vitamin

deficiencies, and anemia do not have more than a minimal effect on Plaintiff's ability to

perform physical or work activities and, as such, are not severe impairments.  AR at

936-37.  The ALJ further considered Plaintiff's anxiety and post-traumatic stress

disorder ("PTSD"), for which there is no evidence in the record prior to June 2021, but

found that the record is devoid of any records showing Plaintiff received specialized

mental health treatment, counseling, or psychotropic medication management for such

mental health impairments, AR at 937, and also found the record supports no more than

a mild/minimal limitation in Plaintiff's ability to perform basic work activities and therefore

are non-severe, AR at 937-38, and that Plaintiff does not have an impairment or

combination of impairments meeting or medically equal to the severity of any listed

impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. at 938.  The ALJ found

that despite Plaintiff's impairments, Plaintiff retains the RFC to perform less than the full

range of light work as defined by 20 C.F.R. § 404.1567(b) and § 416.967(b), in that

Plaintiff can lift and/or carry twenty pounds occasionally, and ten pounds frequently,

stand and/or walk for six hours in an eight-hour workday, sit for six hours in an eight-

hour workday, Plaintiff cannot climb external ladders, ropes, or scaffolds, can rarely

---

[8] The ALJ clarified that Plaintiff's income from his part-time employment in 2015 did not exceed the
current level for SGA.  AR at 936.

(defined as up to 1/6th of an eight-hour workday),, climb step ladders, and occasionally climb ramps or stairs, and Plaintiff cannot be exposed to such hazards as unprotected heights or moving machinery, and cannot drive a commercial vehicle or carry passengers for hire.  AR at 939-42.  The ALJ further found Plaintiff, despite his impairments, remains capable of performing his PRW as a housing inspector.  *Id*. at 942-43.  The ALJ alternatively determined that Plaintiff, based on his age of 46 as of June 23, 2013, his DOD, which was then considered a younger individual, 20 C.F.R. § 404.1563(c) and § 416.963(c), which age category changed to "closely approaching advanced age" when Plaintiff turned 50 on May 7, 2017, 20 C.F.R. § 404.1463(d) and § 416.963(d),[9] high school education, and work experience with transferability of skills not relevant, can perform other jobs existing in significant numbers in the national economy including as a paint-spray inspector, labeler, and small products assembler.  AR at 943-45.[10]  Accordingly, the ALJ found Plaintiff was not disabled as defined in the Act from June 23, 2013, the asserted DOD, through the date of the Second ALJ Decision.  *Id*. at 945.  Here, Plaintiff does not challenge the Second ALJ Decision with regard to the first three steps of the five-step sequential analysis but, rather, the ALJ's determination at the fourth-step that Plaintiff's retains the RFC to perform his PRW as a housing

---

[9] Although as of March 28, 2022, Plaintiff was less than six weeks from turning 55 on May 7, 2022, and thus in the "advanced age" category, 20 C.F.R. § 404.1563(e) and 416.963(e), which category would direct a determination that Plaintiff is disabled based on the Medical-Vocational Guidelines set forth in 20 C.F.R. Part 404, Subpart P, App. 2, ("the Grids"), the ALJ determined that use of the advanced age category "is not supported by the limited adverse impact of all factors on the claimant's ability to adjust to work."  AR at 944.

[10] As Plaintiff argues, Plaintiff's Memorandum at 16, the ALJ incorrectly refers to the paint-spray inspector job as a "small product inspector."  However, Plaintiff's assertion that the ALJ also incorrectly refers to the marker II job as a "labeler" is not correct because the Dictionary of Occupational Titles, on which the SSA relies in classifying jobs, provides that "labeler" is an alternative title for the "marker II" job.

inspector, and the ALJ's alternative determination at the fifth step that there exist in the national economy jobs which Plaintiff, based on his RFC, can perform.

**4.      Analysis of the Arguments**

In support of his motion, Plaintiff argues the ALJ's determination at Step 4 of the sequential analysis that Plaintiff can perform his past relevant work as a housing inspector is not supported by substantial evidence in the record because Dr. Gaeta testified that Plaintiff could not climb ladders yet the ALJ found Plaintiff could climb step ladders as required for the housing inspector job and Plaintiff did not perform his housing inspector job long enough to learn it, Plaintiff's Memorandum at 10-16, the ALJ failed to order a physical consultative examination regarding Plaintiff's physical impairments to his right shoulder and left wrist, *id*. at 16-19, and the ALJ failed to order a consultative psychiatric evaluation of Plaintiff's anxiety disorder. *Id*. at 19-20.  In response and in support of Defendant's motion, Defendant argues that the Commissioner's Step 4 determination is supported by substantial evidence in the record, Defendant's Memorandum at 12-17, substantial evidence supports the ALJ's RFC assessment including the ALJ's reliance on Dr. Gaeta's opinion testimony at the second hearing, *id*. at 17-21, and the ALJ's exercise of his discretion in declining to schedule a psychiatric consultative examination was reasonable. *Id*. at 22-26.  In reply, Plaintiff argues Defendant has not squarely responded to Plaintiff's arguments in support of judgment on the pleadings and references out-dated case law.  Plaintiff's Reply at 1-4.  There is no merit to Plaintiff's arguments.

With regard to Plaintiff's challenges to the ALJ's determination that Plaintiff's RFC permitted Plaintiff to perform his PRW as a housing inspector, the court first

addresses Plaintiff's argument, Plaintiff's Memorandum at 11-15, that the ALJ

erroneously determined that Plaintiff could perform his PRW as a housing inspector

despite there being no substantial evidence in the record that Plaintiff could climb a

stepladder, or whether such job required Plaintiff to also climb external ladders.  As

Defendant argues, however, Defendant's Memorandum at 12-15, substantial evidence

supports the ALJ's determination that Plaintiff retains the RFC to perform his past work

as a housing inspector.

Much of Plaintiff's argument on this point focuses on testifying impartial medical

expert Dr. Gaeta's testimony that Plaintiff 'should not climb ladders or scaffolds."  AR at

965.  Plaintiff maintains that despite this testimony, the ALJ posed hypotheticals to the

VE that impermissibly distinguished between external ladders and stepladders, with the

VE agreeing that Plaintiff could perform his PRW if able to climb stepladders.  Plaintiff's

Memorandum at 11-13.  This argument is, however, without merit because the ALJ's

determination that Plaintiff could climb stepladders is supported by the Cardiac Residual

Functional Capacity Questionnaires completed by Great Lakes Cardiology NP Pyne on

August 30, 2018, AR at 920-24 ("August 30, 2018 Assessment"), and October 25, 2021,

AR at 1601-06 ("October 25, 2021 Assessment").  Significantly, in both the August 30,

2018, and October 25, 2021 Assessments, NP Pyne reported Plaintiff had normal

cardiac examinations that showed normal cardiac function, was asymptomatic, with

excellent prognosis, no shortening of life expectancy, and could work with only minor

restrictions such as moderate stress, sitting six hours in an eight-hour workday, and

standing or walking four hours in an eight-hour workday, occasional postural limitations,

and some environmental restrictions such as avoiding concentrated exposure to

extreme heat and heavy machinery, AR at 920-24, 1601-06,  NP Pyne also indicated

Plaintiff could occasionally climb ladders and frequently climb stairs.  AR at 923, 1605.

Although Pyne is a nurse practitioner rather than a medical doctor, the ALJ sufficiently

articulated, as required by 20 C.F.R. §§ 404.1527(f) and 416.927(f),[11] that he was fiving

significant weight to NP Pyne's assessments insofar as they are not inconsistent with

Dr. Gaeta's opinion rendered during his testimony, and both assessments were in

Plaintiff's file when reviewed by Dr. Gaeta.  AR at 941.  Significantly, "[t]he ALJ is

permitted to discount the opinion of a treating physician if it is inconsistent with other

substantial evidence in the record."  *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2002).

Here, Dr. Gaeta is an impartial medical expert rather than a treating physician such that

his opinion is not subject to the so-called treating physician rule.  Further, interpreting

Dr. Gaeta's reference that Plaintiff should avoid "ladders" to mean all ladders regardless

of size is very broad and inconsistent with NP Pyne's assessment that Plaintiff had, at

most, an occasional restriction from climbing ladders which assessment was based

upon examinations of significant longitude as to support the ALJ's grant of greater

weight to NP Pyne's assessments rather than Dr. Gaeta's opinion.  20 C.F.R. §§

404.1527(f) and 416.927(f).  This narrower construction is consistent with the fact that

Plaintiff, despite testifying that his housing inspection job regularly required Plaintiff to

check smoke detectors, AR at 990, Plaintiff never mentioned any problem with climbing

ladders but, instead, consistently maintains he is unable to work because he has no

energy, AR at 981, and sitting for long periods of time is his greatest struggle.  AR at

987.  Further, the VE clarified that the type of ladder Plaintiff may be required to use in

---

[11] Because Plaintiff's disability applications were filed prior to March 27, 2017, the opinion evidence is subject to the treating physician's rule set forth in 20 C.F.R. §§ 404.1527 and 416.927.

his job as a housing inspector, rather than a building inspector, would not be an external ladder but would be a step ladder within a home to check fire detectors mounted on a ceiling and light bulbs. *Id*. at 994-95. Accordingly, substantial evidence in the record supports the ALJ's interpretation of Dr. Gaeta's opinion testimony that Plaintiff should avoid ladders to refer only to external ladders such as would be suitable for climbing onto a roof, rather than a step ladder that would be used within a home.

Nor is there any merit to Plaintiff's argument, Plaintiff's Memorandum at 15-16, that because Plaintiff performed his housing inspector job only part-time, Plaintiff could not have adequately learned the job which is categorized in the Dictionary of Occupational Titles ("DOT")[12] at specific vocational preparation ("SVP") level 7, given that SVP 7 work requires "[o]ver 2 years and up to and including 4 years" to learn.[13] *See* Dictionary of Occupational Titles, Appendix C: Components of the Definition Trailer, § II. Specific Vocational Preparation (SVP), *available at*: https//www.occupationalinfo. org/appendxc_1.html# (last visited Aug. 13, 2025). Rather, as Defendant observes, Defendant's Memorandum at 15-16, Plaintiff worked at the housing inspector job for almost ten years, *i.e.*, from 2011 to 2020, AR at 246-27, 1302-04, and nothing in the DOT provides that an SVP level 7 job performed on a part-time basis cannot be learned within the specified time. Nor is there any evidence that Plaintiff had any special work restrictions as Plaintiff suggests. Plaintiff's Memorandum at 15-16 (referencing AR at 193-94 (SSA Work Activity Questionnaire completed by Plaintiff's employer,

---

[12] The SSA primarily relies on the Dictionary of Occupational Titles or "DOT" "for information about the requirements of work in the national economy." Social Security Ruling 00-4P, Policy Interpretation Ruling: Title II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704, at * 2 (S.S.A. Dec. 4, 2000).

[13] Other than insinuating that Plaintiff's inability to fully learn the housing inspector job precludes considering such employment as PRW, the relevance of this argument is not clear.

Cattaraugus Development Corporation regarding Plaintiff's work as a Housing Quality Standards Inspector).  Rather, the form to which Plaintiff refers provides that Plaintiff sets his own hours for work, and that Plaintiff did work under special, albeit, unspecified, conditions, "during the health crisis," that Plaintiff's work was satisfactory, and that otherwise Plaintiff could and did complete all usual job duties without special assistance.  AR at 193-94.  Accordingly, there is no merit to Plaintiff's argument that because Plaintiff's employment as a housing inspector was on a part-time basis, Plaintiff never fully learned the job.

Even if the ALJ erred in finding Plaintiff retained the RFC to perform his PRW as a housing inspector, such error was harmless because substantial evidence in the record supports the ALJ's step 5 determination that there are several alternative jobs in the national economy that Plaintiff can perform.  *See David W. v. Comm'r of Soc. Sec.*, 2018 WL 6088095, at *12 (N.D.N.Y. Nov. 20, 2018) (holding the ALJ's error at step 4 in determining that the plaintiff could perform PRW was harmless where substantial evidence in the record supported the ALJ's alternative and correct identification of other jobs existing in the national economy that the plaintiff could perform based on his RFC). The jobs, initially identified by the VE at the second hearing, AR at 998, include working as a paint-spray inspector, marker II, and assembler, small products I, all of which are "light work" and none of which require use of any ladders.  AR at 944-45.

Insofar as Plaintiff maintains that the ALJ, in formulating Plaintiff's RFC, also failed to take into account limitations posed by Plaintiff's right shoulder and left wrist impairments,[14] Plaintiff's Memorandum at 16-17, the record establishes the ALJ did

---

[14] Plaintiff is left-hand dominant.  AR at 988, 1385.

consider such impairments and substantial evidence in the record supports the ALJ's determination that such non-severe impairments did not require incorporating additional limitations into the RFC.[15]  Specifically, the ALJ considered that medical evidence in the record shows Plaintiff "has been medically managed for . . . right shoulder impingement syndrome, left wrist hyperextension, history of carpal tunnel . . . ."  AR at 936.  The ALJ remarked that the record contains a reference to "a history of left-sided carpal tunnel surgery, but there is no medial evidence of residual deficits."  AR at 937 (citing AR at 550 (office treatment note dated September 3, 2013 indicating Plaintiff's past surgical history included "left carpal tunnel release").  The ALJ further noted Plaintiff's left carpal tunnel release occurred in 2004.  *Id*.

The only evidence in the record that Plaintiff's right shoulder and left wrist impairments caused any limitations in Plaintiff's ability to work is found in a Physical Residual Functional Capacity Questionnaire completed by NP Kottwitz at Cuba FHC June 1, 2021, AR at 1373-1377 ("June 1, 2021 Assessment"), in which Plaintiff was reported to have complained of a "frozen right shoulder," AR at 1373, no diagnosis regarding the shoulder was given.  The June 1, 2021 Assessment also indicated that Plaintiff hand limitations with reaching, handling and fingering included that grasping, turning, and twisting objects, as well as fine finger manipulations, were limited to 50% with the right hand and 5% with the left hand, and Plaintiff was unable to reach overhead with either arm.  AR at 1367.  Not only are these limitations not supported by

---

[15] The court notes that Plaintiff, by failing to challenge the ALJ's failure at Step 2 to find Plaintiff's right shoulder and left wrist impairments to be severe medical impairments, has waived such objection.  *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir 2009) (issues not raised before the district court in support of judgment on the pleadings are waived).

substantial evidence in the record, but these limitations are in contrast to other evidence in the record.

In particular, although Plaintiff attributes his right shoulder and left wrist impairment to a fall in 2004, Plaintiff did not include such impairments in his disability benefits applications in which he claims he is unable to work because of his heart attack, pacemaker, and stents.  AR at 262.  Dr. Rosenberg's June 6, 2016 consultative internal medicine examination reported Plaintiff's left wrist surgery, *id*. at 581, but upon examination Plaintiff had full range of motion ("ROM"), bilaterally, of shoulders, elbows, forearms, and wrists, joints were stable and nontender and without redness, heat, swelling, or effusion (abnormal fluid accumulation), hand and finger dexterity was intact and grip strength was 5/5 bilaterally, *id*. at 582, and Dr. Rosenberg made no diagnosis and assessed no limitations to Plaintiff's ability to work based on any shoulder or wrist impairment.  *Id*. at 582-83.  This is consistent with Plaintiff's testimony at the second hearing, attributing both his right shoulder and left wrist impairments to a fall off a wall in 2004 while working at his previous job as a construction worker at Owl Homes, AR at 989, with the ALJ commenting that Plaintiff later, in 2007, worked at a junkyard where Plaintiff was required to regularly lift 50 to 75 lbs.  AR at 937 (referencing AR at 263).

Further, treatment notes from Cuba FHC show that on September 29, 2020, NY Bessey reported Plaintiff denied any limitations of movement, muscle aches, joint pain, swelling, and joint swelling, AR at 1388, and upon examination, upper extremities were "normal to inspection and palpation," with full ROM bilaterally, motor strength 5/5 bilaterally, no sensory or motor deficits were noted, and reflexes and coordination were normal.  AR at 1390.  NP Bessey reported the same findings on January 29, 2021.  AR

at 1384-86.  Although on June 1, 2021, NP Kottwitz, who had not previously examined Plaintiff, AR at 1373, reported Plaintiff complained about a frozen right shoulder, and of constant pain and swelling of his left wrist "with any repetitive use," AR at 1575, and observed that Plaintiff had moderate swelling of his left wrist, *id*. at 1576, NP Kottwitz did not report similar findings at a subsequent examination of Plaintiff on September 9, 2021, but only that Plaintiff's upper extremities showed motor strength at 5/5 bilaterally, no focal sensory or motor deficits were noted, and reflexes and coordination were normal.  *Id*. at 1573.  Moreover, despite testifying at the second hearing that he cannot reach overhead with both arms, Plaintiff explained that in performing his housing inspection job, he would test smoke detectors by reaching up with his left arm.  AR at 990.  Significantly, Plaintiff's second hearing testimony does not include any statements attributing his inability to perform his PRW as a housing inspector to any impairments of his right shoulder or left wrist; rather, when questioned as to what made the job untenable, Plaintiff responded, "Probably the sitting down for any length of time anymore," including sitting while driving to various inspection sites and the follow-up office work.  AR at 987.  Accordingly, the ALJ's failure to incorporate additional work restrictions into the RFC based on Plaintiff's non-severe right shoulder and left wrist impairments is supported by substantial evidence in the record.

As regards Plaintiff's argument that the ALJ was required to obtain a psychiatric evaluation of Plaintiff's anxiety and PTSD, Plaintiff's Memorandum at 19-20, as Defendant counters, Defendant's Memorandum at 22-24, whether to order a psychiatric evaluation was within the ALJ's discretion.  *See Simon v. Colvin*, 2013 WL 4094612, at *6–7 (W.D.N.Y. Aug. 13, 2013) (finding no psychiatric consultative evaluation needed

where substantial evidence in the record to support ALJ's conclusion).  Further, "[a]n ALJ is not obligated to order a consultative examination if the facts do not warrant or suggest the need for such an examination."  *Brown v. Astrue*, 2012 WL 2953213, at *7 (W.D.N.Y. July 19, 2012).  Here, the ALJ's decision not to order a psychiatric evaluation is supported given that Plaintiff points to no medical evidence of any limitations stemming from his asserted anxiety and PTSD; rather, Plaintiff is repeatedly found to have no limitations attributed to any mental health impairments.  *See*, *e.g.*, October 25, 2021 Assessment (NP Pyne reporting Plaintiff's physical symptoms and limitations would not "cause emotional difficulties such as depression or chronic anxiety"), and September 9, 2021 Treatment Note (AR at 1573-74) (NP Kottwitz reporting Plaintiff "[d]enies psychiatric symptoms," with normal mood, appropriate affect, and judgment and insight grossly intact).  Although NP Kottwitz did assess Plaintiff with anxiety due to Plaintiff's concern that he might experience another cardiac episode, AR at 1574, Plaintiff denied NP Kottwitz's offer to prescribe Plaintiff with antianxiety medication.  *Id*. The ALJ considered this evidence as well as that NP Kottwitz initially established treatment with Plaintiff on June 1, 2021, the same date she rendered her assessment that Plaintiff has anxiety that contributes to his physical condition and increases with stress.  AR at 942 (referencing AR at 1373-77).  In short, in the absence of any medical evidence supporting that Plaintiff's anxiety and possible PTSD imposes limitations on Plaintiff's ability to work, the ALJ's decision not to order a psychiatric evaluation was reasonable.  *See William M. v. Comm'r of Soc. Sec.*, 2023 WL 7294872, at * 4 (W.D.N.Y. Nov. 6, 2023) (where there are no apparent gaps in the record or any

ambiguities needing further explanation, the ALJ does not err in failing to order a further consultative examination).

Moreover, as the ALJ observed, AR at 939, Plaintiff testified that he only stopped working in August 2020 because he was laid off, AR at 979, after which Plaintiff collected unemployment benefits until they were exhausted in September 2021. *Id*. Significantly, a claimant's application for unemployment benefits is considered to indicate the claimant is able to work. *See Stellmaszyk v. Berryhill*, 2018 WL 4997515, at * 29 (S.D.N.Y. Sept. 28, 2018) (claimant's application for unemployment benefits represented she was able to work and was "facially inconsistent" with, and did not support her disability claim); *Rich v. Comm'r. of Soc. Sec*., 2009 WL 2923254, at * 1 (W.D.N.Y. Sept. 10, 2009) (noting the plaintiff's receipt of unemployment benefits evidences the ability to work).

The Second ALJ Decision thus is supported by substantial evidence.


## **CONCLUSION**

Based on the foregoing, the Second ALJ Decision that Plaintiff is not disabled is supported by substantial evidence in the record.  Accordingly, Plaintiff's Motion (Dkt. 14) is DENIED; Defendant's Motion (Dkt. 16) is GRANTED.  The Clerk of Court is DIRECTED to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    August 25, 2025
          Buffalo, New York